1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.T., | Case No. C22-1140-RSM |
| Plaintiff, | |
| | ORDER RE: MOTIONS FOR |
| | SUMMARY JUDGMENT |
| v. | |
| SEATTLE SCHOOL DISTRICT NO.1, | |
| Defendant. | |

## I.  INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment, Dkt. #18, and Plaintiff's Motion for Partial Summary Judgment, Dkt. #21.  Defendant moves for summary judgment on all of Plaintiff's claims.  Plaintiff moves for partial summary judgment only on his 42 U.S.C. § 1983 First Amendment claim.  For the following reasons, the Court DENIES IN PART and GRANTS IN PART Defendant's Motion and DENIES Plaintiff's Motion as stated below.

## II.  BACKGROUND

The following facts are adopted from Plaintiff's Complaint, Dkt. #1, and Defendant's Motion, Dkt. #18.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 1

Plaintiff is a former student of Garfield High School who is on the autism spectrum. During his time at the school, he participated on the swim team.  During Plaintiff's junior year, 2019-2020, Plaintiff was enrolled in the Running Start Program, which meant Plaintiff attended college and university classes at nearby institutions.  Plaintiff was required to sign in and out of Garfield High School's front office whenever on campus.

On December 15, 2017, Plaintiff alleges that, as a freshman, he witnessed sexual hazing in the swim team locker room.  On December 6, 2019, Plaintiff alleges that he witnessed high school students taking "selfies" in the locker room while other dressed in the background, along with witnessing several naked teammates heading into a private shower stall.  On December 24, 2019, Plaintiff alleges that he again saw swim team members taking "selfies" in the locker room. That day, Plaintiff emailed his swim team coach, asking him to address the locker room behavior he witnessed.  His coach responded that he would address it and hosted a team meeting the next day to discuss these concerns.

In January 2020, a student journalist reached out to Plaintiff about discussing his experiences for an article on sports-team hazing at the school.  Plaintiff met with the journalist to discuss both the 2017 and 2019 incidents.  On January 12, 2020, Plaintiff experienced an emotional meltdown at a Robotics Club competition.  The Robotics Club teacher and advisor was present, and Plaintiff told him about the 2017 swim team incident and speaking with the school journalist.  The Robotics teacher called Plaintiff's parents and followed up with school staff and administration about the 2017 incident.

Plaintiff later planned to meet with the student journalist to clarify a few details on January 17, 2020.  That morning, the school principal was informed about the student journalist's story on sexual hazing by the journalism teacher.  The principal emailed the manager of the Office of Student Civil Rights, Title IX Coordinator, and Director of Investigations for the

District, who then replied with steps to respond to alleged sexual hazing reports, the District's policy on student expression in school-sponsored media, and safety plan templates. The assistant principal then filed a police report and initiated a school-level investigation.

The school's assigned police officer from Seattle Police Department was also informed of the situation via dispatch. As part of his duties as the on-duty School Resource Officer ("SRO"), he was required to be in uniform and carry a holstered weapon.

On the afternoon of January 17, 2020, Plaintiff went to the school and checked in at the front office to attend his interview with the school journalist. The assistant principal requested to speak with Plaintiff and lead him to his private office. The assistant principal also requested the SRO's presence. They spoke, and a "safety plan" was signed by Plaintiff. This safety plan included terms such as "Follow directions from all staff," "No threats, intimidation or harassment of other students or staff," and the following:

> Agreement to and compliance with the above conditions are necessary to maintain enrollment at school. If the conditions are violated, a multidisciplinary team will re-convene and the school may re-instate the Emergency Exclusion for Safety Reasons. Further student misbehavior will be sanctioned based on the progressive discipline standards of Seattle Public Schools.

The assistant principal then phoned Plaintiff's mother and requested a parent come to the school, who said that they (Plaintiff's parents) did not want the SRO interviewing Plaintiff without them present. Plaintiff's father arrived later, and he declined to give permission for Plaintiff to be interviewed. Plaintiff then became visibly upset, crying into his father's shoulder. The vice principal stated that it "would not be best" for Plaintiff to speak to the newspaper, and Plaintiff's father agreed and signed the safety plan. Plaintiff was not provided a copy of the safety plan. Afterward, Plaintiff and his father met with the journalism teacher and the school therapist.

Later, Plaintiff's parents discussed the safety plan and some of the "unfavorable terms." Plaintiff's father emailed the assistant principal and revoked the safety plan. On January 21, 2020, Plaintiff's mother sent a complaint to Defendant alleging that Plaintiff was harassed, intimidated, and bullied by the assistant principal and SRO. Defendant determined that there was insufficient evidence and Plaintiff's parents appealed. On May 21, 2021, the Hearing Examiner affirmed Defendant's decision. Plaintiff then filed this action in King County Superior Court on July 13, 2022, which was removed to this Court on August 15, 2022.

### III.   DISCUSSION

#### A. Legal Standard

Summary Judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 5547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the non-moving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Analysis**

  **a.  42 U.S.C. § 1983 Claim**

   **i.  Whether Defendant is Subject to *Monell* Liability**

Defendant argues that Plaintiff's First Amendment claim should be dismissed because there is no basis to impose municipal liability and, alternatively, because Defendant did not deprive Plaintiff of his right to free speech. Dkt. #18 at 13-22. Plaintiff disagrees, contending that genuine issues of material fact exist regarding Defendant having a practice of censorship. Dkt. #33 at 24.

42 U.S.C. § 1983 provides for any person who suffers a constitutional or legal violation by a state or federal official to sue for damages or relief. *See* 42 U.S.C. § 1983. A school district can be held liable under § 1983 "when execution of a . . . policy or custom whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the . . . entity is responsible" for, not "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Municipal liability requires that "a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). "A school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" *Lytle. v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004).

Defendant argues that there is insufficient evidence connecting an expressly adopted official policy or longstanding practice or custom of Defendant to the alleged violation. Dkt. #18 at 14. Plaintiff contends that his school principal had a "longstanding practice of censoring

student reporting related to views he just simply opposed." Dkt. #33 at 24.  However, Plaintiff

mentions only one other alleged incident of the school principal suppressing a school article.  *Id.*

Plaintiff's school principal stated that he prohibited a school article from publishing "[o]nce"

when the school paper "did a slanderous article on [a former principal] who was leaving Garfield

[the school], going to another school."  Dkt. #35, Ex. 4 at 70.  The school's alleged liability, with

this instance coupled with Plaintiff's allegations, is "predicated on isolated or sporadic incidents;

[liability] must be founded upon practices of sufficient duration, frequency and consistency that

the conduct has become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d

911, 918 (9th Cir. 1996).  Plaintiff does not provide sufficient facts to allege any longstanding

practice or custom based on the school principal's actions here.

      Plaintiff does, however, raise other genuine disputes regarding a potential longstanding

practice or custom.  Plaintiff asserts that the school principal and assistant principal "acted

pursuant to specific directive . . . and 'board policy'" in prohibiting the article and stopping

Plaintiff from speaking to the newspaper student reporters.  Dkt. #33 at 25.  As stated above,

liability "must be founded upon practices of sufficient duration, frequency and consistency that

the conduct has become a traditional method of carrying out policy."  *Trevino*, 99 F.3d at 918.

"For purposes of *Monell* liability, the term 'policy' includes within its definition not only policy

in the ordinary sense of a rule or practice . . . but also includes 'a course of action *tailored to a*

*particular situation* and not intended to control decisions in later situations.'"  *Lytle*, 382 F.3d at

983 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (emphasis added).

      In the school principal's deposition, he said that "anytime you do an investigation, then

everything should stop until you have completed the investigation" and that he was "given a

directive to do something" regarding telling the newspaper that they could not move forward

with the article.  Dkt. #35 at 86-87, 114.  The school assistant principal also told Plaintiff that

"it's probably best not to [speak to the newspaper] during an investigation" and he "thought it was in [Plaintiff's] best interest not to speak to the newspaper because the investigation was going on." *Id.* at 54, 76. These facts are scant. But whether a practice existed based on these facts is a question of fact for a jury. Therefore, the Court concludes that Plaintiff has sufficiently alleged material disputes of fact regarding if the school district had a longstanding policy or custom to limit student's First Amendment rights during supposed school investigations.[1]

### ii. Whether Plaintiff Has Viable First Amendment Claim

Defendant contends that Plaintiff's First Amendment claim cannot survive summary judgment because the school district never disciplined Plaintiff and did not impose a legal impediment on his future expression. Dkt. #18 at 17-22. Plaintiff does not contest this argument in his Response to Defendant's Motion. Dkt. #33. Instead, Plaintiff filed a Motion for Partial Summary Judgment on his First Amendment claim, arguing that Plaintiff engaged in constitutionally protected speech and Defendant retaliated against Plaintiff over his actions. Dkt. #21. In Defendant's Response, Defendant contends that Plaintiff was not disciplined and was not engaged in protected speech, thus he has no First Amendment claim. Dkt. #36.

"To establish a First Amendment retaliation claim in the student speech context, a plaintiff must show that (1) he was engaged in a constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). The Court discusses these factors in turn below.

---

[1] Plaintiff also argues that liability under *Monell* is proper because the school principal and assistant principal were acting as final policymakers. Dkt. #33 at 25. The Court need not address this argument because only one method of liability (here, longstanding practice or custom) is required.

### 1. Constitutionally Protected Activity

Plaintiff argues that his attempt to speak with the school newspaper to clarify some of his prior statements was a constitutionally protected activity. Dkt. #21 at 7-8. Defendant does not address this issue in its Motion but argues in its Response that Plaintiff's statements "were made with a reckless disregard for the truth and do not enjoy constitutional protection." Dkt. #36 at 11. Defendant alleges that Plaintiff "continues to perpetuate the fiction that he witnessed members of the swim team engage in inappropriate sexual conduct in the private shower stall, knowing it is false." *Id*. Defendant argues that Plaintiff knows these statements are falsehoods because "his teammates informed him that nothing occurred" and he did not seek out his teammates to clarify. *Id*.

However, whether or not the events occurred in the team locker room are not questions for the Court to settle here. On multiple occasions, Plaintiff brought up instances of questionable conduct occurring in the locker room and was even found in an obvious state of crying by one of his teachers. *See gen*. Dkt. #1. Something occurring within the swim team appeared to affect Plaintiff and stir up this entire case, and simply because Plaintiff never talked to a teammate outright or his teammates told him nothing happened does not equate to Plaintiff's statements being falsehoods he knowingly perpetuated. While Plaintiff's arguments might not hold water in other regards, Defendant's attempt to paint Plaintiff dishonestly regarding his alleged experience without substantiation does not convince this Court that Plaintiff was not engaging in protected speech. The Court concludes that Plaintiff has alleged sufficient facts to show that he was participating in constitutionally protected speech. Whether Plaintiff's intended speech was constitutionally protected or falls under an exception, such as representing a risk of substantial disruption to the school environment or others, is a question better left to a jury.

### 2. Chill

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 8

The Court also finds that genuine questions of material fact exist regarding whether Defendant's actions would "chill a person of ordinary firmness" from participating in protected speech. Alleged actions against a student bringing a First Amendment retaliation claim must be more than "de minimis deprivations of benefits and privileges[.]" *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010).

Defendant argues that Plaintiff experienced no disciplinary or adverse action to create a chilling effect in a student of ordinary firmness. Dkt. #18 at 18. As Defendant states in its Motion, First Amendment student speech cases might ordinarily involve "explicit censorship or openly disciplinary action[,]" but that is not an explicit requirement. *Id.* at 18; *see gen. Pinard*, 467 F.3d 755; *O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016).

"Under Ninth Circuit law, Plaintiffs do not have a retaliation claim based on threats of discipline for First Amendment activity if that threat is itself based upon lawful consequences and is not *actually* administered." *Corales v. Bennett*, 567 F.3d 554, 565 (9th Cir. 2009). However, the crux of the question at issue here is not if lawfully consequential discipline was actually administered but was Plaintiff "chilled" by a threat of discipline *not based on* lawful consequences. Here, Plaintiff was asked to speak with the school assistant principal in the presence of the SRO in a private office. As Defendant points out, courts have held that school administrators need to be able to investigate reports of sexual misconduct, even by separating a student to speak with them, and this is "precautionary and protective[,]" not disciplinary. *See Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 274 (2d Cir. 2011). The actions of the school assistant principal, even with the presence of the school police officer, are not necessarily "chilling."

The school's supposed "safety plan" coupled with the assistant principal's and SRO's actions create a question. As Plaintiff contends, this safety plan that Plaintiff and his parent

signed required Plaintiff to "[f]ollow directions from all staff . . . [f]ollow school rules . . . [make no] threats, intimidation or harassment of other students or staff" and stated that "[a]greement to and compliance with the above conditions are necessary to maintain enrollment at school" and "[f]urther student misbehavior will be sanctioned based on the progressive discipline standards of Seattle Public Schools." Dkt. #1, Ex. A. Plaintiff's parents later called the school to revoke this plan out of objections to its content. *Id.* at 14. Multiple school administrators questioned the language of the safety plan, and at least one stated that this safety plan appeared disciplinary. Dkt. #35, Ex. 3 at 98, Ex. 4 at 103. It is not clear how Plaintiff's actions warranted "lawful consequences" and possible threats of discipline. Plaintiff did not participate in a walkout or any other activity blatantly against school rules or policy. *See* Corales, 567 F.3d at 565. While Defendant claims that the "safety plan is a non-disciplinary tool used to identify support and safety measures for [Plaintiff's] needs[,]" the Court fails to see how no factual argument exists whether the safety plan appeared disciplinary or not. Dkts. #36 at 13, #35, Ex. 3 at 100 ("I read it [the safety plan] and had questions on what actual impact that last provision would have if this is a safety plan."). Thus, Plaintiff has raised genuine issues of material fact as to whether the safety plan paired with the school administrators' actions created an uncalled-for situation that would chill any reasonable student from participating in protected speech.

However, the Court is not convinced by Plaintiff's argument in his Motion that these actions clearly constitute a First Amendment violation. See Dkt. #21 at 9-11. While Plaintiff has raised genuine issues of material fact against Defendant's Motion, he has not resolved these issues in his own Motion. In Plaintiff's own Response to Defendant's Motion, Plaintiff argues that there are genuine issues of material fact regarding Defendant's liability under *Monell*. Dkt. #33 at 24. Whether a person of ordinary firmness would have been chilled, whether a policy actually existed, whether school administrators stopped Plaintiff from speaking to the school

newspaper, whether the school "retaliated," whether the school's investigation was pretextual, or whether the school was simply acting in Plaintiff's best interests, to name a few, are all genuine issues of material fact best answered by a fact-finding jury, not this Court on summary judgment motions.

### b. False Imprisonment Claim

Defendant argues for dismissal of Plaintiff's false imprisonment claim because Plaintiff was not "intentionally imprisoned," Defendant was authorized to speak with Plaintiff regarding his reports, and Plaintiff was not wrongfully deprived of his freedom of movement because he was not lawfully permitted unrestricted campus access at the time. Dkt. #18 at 22-24. Plaintiff raises no arguments against this Motion in his Response. *See gen*. Dkt. #33.

Plaintiff's lack of response to Defendant's argument does not allow this Court to consider it as an admission that Defendant's motion has merit. *See* Local Civil Rule 7(b)(2). However, while the Court must take all inferences in Plaintiff's favor as the non-moving party, Plaintiff must make a "sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof" to survive summary judgment. *Catrett*, 477 U.S. at 323.

To state a claim of false imprisonment, a plaintiff must demonstrate that he has been "deprived of either liberty of movement or freedom to remain in the place of his lawful choice[.]" *Bender v. Seattle*, 99 Wn.2d 582, 591 (1983) (internal citation omitted). False imprisonment can be "by physical force alone, or by threat of force, or by conduct reasonably implying that force will be used." *Id*. (quoting *Kilcup v. McManus*, 64 Wn.2d 771 (1964)).

The Court concludes that no genuine question of material fact exists to deny Defendant's Motion on this claim. As Defendant argues, "a school district has the power to control the conduct of its students while they are in school or engaged in school activities[.]" *Quynn v. Bellevue Sch. Dist.*, 195 Wn.App. 627, 634 (2016) (quoting *Peck v. Siau*, 65 Wn.App. 285, 292

(1992).  As any who have attended grade school know, students are not permitted general free movement during school hours.  Furthermore, as Plaintiff was not enrolled in classes at the high school but was a full-time Running Start student at the time, Plaintiff did not have permitted access to the school under district policy.  Dkt. #19, Ex. O at 11 (explain that Running Start student are only allowed on campus for scheduled meetings , such as those required for graduation with a school counselor, or school activities.).  Furthermore, Defendant was required under Washington Law "to take prompt and appropriate action to investigate" any allegations of sexual harassment.  WAC 392-190-0555(1)(c).  Speaking privately with Plaintiff regarding what he heard or saw would be a necessary step in investigating Plaintiff's allegations.  The school's assistant principal requesting to speak with Plaintiff privately, not locking Plaintiff in a room, and the mere presence of the school's officer, even in uniform with a holstered firearm, does not equate to false imprisonment.  The Court concludes that Defendant has shown no question of material fact exists regarding Plaintiff's false imprisonment claim.  Thus, summary judgment is granted on this issue.

### c.  Negligence and Negligent Infliction of Emotional Distress Claims (NIED)

Defendant contends that Plaintiff's negligence and NIED should be dismissed because "there was no foreseeable risk, threatened danger of injury, or disproportionate unreasonable conduct . . . [and Plaintiff's] negligence claims are inextricably linked to his s 42 U.S.C. § 1983 claim."  Dkt. #18 at 24.  Defendant argues that there is insufficient evidence for Plaintiff's assertion that Defendant breached its duty to Plaintiff "by threatening . . . and silencing him" and no other basis exists.  *Id*.  Plaintiff contends that these claims are separate from his First Amendment claim and genuine issues of material fact remain.  Dkt. #33 at 18-23.

"To prevail on a negligence claim, a Washington Plaintiff must show (a) the existence of a duty to the plaintiff, (b) a breach of that duty, (c) a resulting injury, and (d) the breach as the

proximate cause of the injury." *Turner v. Washington State Dep't of Soc. & Health Servs.*, 198 Wn.2d 273, 284 (2021) (internal quotation marks and citations omitted). School districts have a special relationship with their students, enhancing the duty of care owed to students against foreseeable dangers. *See Harris v. Fed. Way Pub. Sch.*, 21 Wn App. 2d 144, 153 (2022).

For a claim of NIED, a plaintiff must show "duty, breach, proximate cause, damage, and 'objective symptomatology.'" *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 505 (2014) (quoting *Strong v. Terrell*, 147 Wn.App. 376, 387 (2008)). Actions based on mental distress are subject to the court's limitation, thus a defendant's "conduct is unreasonable when its risk outweighs its utility." *Id*. A plaintiff may recover for NIED "in the absence of physical injury only where emotion distress is (1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifest by objective symptomatology." Bylsma v. Burger King Corp., 176 Wn.2d 555, 560 (2013) (citation omitted).

The Court agrees with Defendant that Plaintiff's negligence and NIED claims are duplicative of his First Amendment claims. In his Complaint, Plaintiff asserts that Defendant breached its duty of care by "threatening [him] and silencing him and thus exacerbating his underlying trauma" and causing harm. These alleged duties, threats, and acts of chilling Plaintiff into silence are directly duplicative of his First Amendment claim. Plaintiff attempts to differentiate these tort claims from his First Amendment claim by stating that the Defendant owed Plaintiff a duty of care "in responding to the trauma he experienced[.]" Dkt. #33 at 19. However, Plaintiff later states that his negligence claim is based on Defendant's breach of its "duty of care [owed] when responding to [Plaintiff's] desire to speak to his school newspaper" and "mental distress caused by the Defendant prohibiting him under threat of disciplinary action[.]" *Id*. at 21, 22. He also argues that his NIED cause of action "also arises from the Defendant's duty to exercise ordinary care in responding to the Plaintiff's desire to speak again

to his school newspaper[.]" *Id*. at 23.  All of these alleged actions of Defendant are the factual and legal basis for Plaintiff's First Amendment claim.  "[T]hree separate legal theories based upon one set of acts constitute one 'claim for relief[.]'" *Snyder v. State*, 19 Wn.App. 631, 635 (1978).  "A single claim for relief, on one set of acts, is not converted into multiple claims, by the assertion of various legal theories." *Pepper v. J.J. Welcome Const. Co.*, 73 Wn.App. 523, 546 (1994).  Even taking all inferences in favor of Plaintiff as the non-moving party, the Court concludes that Plaintiff's tort claims are duplicative of his First Amendment claim.  Therefore, the Court dismisses Plaintiff's negligence and NIED claims.

## IV.    CONCLUSION

Having reviewed the parties' filings and the remainder of the record, the Court finds and ORDERS:

(1) Defendant's Motion for Summary Judgment, Dkt. #18, is DENIED IN PART and GRANTED IN PART.  Plaintiff's negligence and negligent infliction of emotional distress claims are DISMISSED.  Plaintiff's First Amendment claim under 42 U.S.C. § 1983 REMAINS.

(2) Plaintiff's Motion for Partial Summary Judgment, Dkt. #21, is DENIED.


DATED this 26th day of March, 2024.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 14